

# FILED

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NV-18-1175-KuTaB |
| JAN GLASER and TATYANA KHOMYAKOVA, | Bk. No. 2:16-bk-15483-ABL |
| Debtors. | |
| SHELLEY D. KROHN, Chapter 7 Trustee, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| JAN GLASER; TATYANA KHOMYAKOVA, | |
| Appellees. | |

Argued and Submitted on February 21, 2019
at Las Vegas, Nevada

Filed – March 5, 2019

Appeal from the United States Bankruptcy Court
for the District of Nevada

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable August B. Landis, Bankruptcy Judge, Presiding

———————

Appearances: Jeanette McPherson of Schwartzer & McPherson Law Firm argued for appellant Shelley D. Krohn, Chapter 7 Trustee; Vernon Bailey argued for appellees Jan Glaser and Tatyana Khomyakova.

———————

Before: KURTZ, TAYLOR, and BRAND, Bankruptcy Judges.

Chapter 7[1] trustee, Shelley D. Krohn (Trustee), appeals from the bankruptcy court's order denying her motion for (1) a determination that the malpractice cause of action of debtors, Jan Glaser and Tatyana Khomyakova (collectively, Debtors), against their bankruptcy attorney was property of Debtors' bankruptcy estate and (2) damages for Debtors' violation of the automatic stay. We AFFIRM.

## FACTS

The facts are undisputed. Attorney Marjorie Guymon of Goldsmith and Guymon, P.C. (collectively, Ms. Guymon) represented Debtors in their bankruptcy case. Debtors sought to discharge unsecured federal income tax claims for the tax years 2011 and 2012. They received their discharge in February 2017. Ms. Guymon told Debtors in an e-mail that all unsecured debts were discharged, including the debt owed to the Internal Revenue

———————

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

Service (IRS).

In June 2017, Debtors received a letter from the IRS notifying them that they owed $257,570.46 for the 2012 tax year plus accruing interest and penalties. As it turned out, because they had received a six month extension from the IRS in connection with their 2012 tax debt, Debtors filed their bankruptcy case approximately six days too early to discharge that debt.

Debtors engaged attorney Vernon L. Bailey to represent them in connection with Ms. Guymon's alleged legal malpractice. Settlement negotiations ensued but were ultimately unsuccessful because counsel for Ms. Guymon required Mr. Bailey to notify Trustee about the malpractice claims and potential settlement. Mr. Bailey declined to do so and thereafter filed a state court complaint on behalf of Debtors and against Ms. Guymon alleging claims for legal malpractice. Debtors alleged that Ms. Guymon was negligent for having failed to discuss the legal consequences of the six month extension they had received from the IRS regarding their 2012 income taxes. Had she done so, Debtors maintained they would have waited the six days (or more) before filing their petition to assure discharge of their 2012 tax debt. Or, they alternatively noted, they could have voluntarily dismissed their case, and after the appropriate period, re-filed.

Debtors alleged as damages that after discharge their passports were revoked due to delinquent tax debt in excess of $50,000. They further

alleged that Mr. Glaser was precluded from being a loan officer because he could not meet the financial criteria due to the tax debt. Debtors claimed total damages in the amount of the tax owed plus interest and penalties and over $1 million additional damages due to Mr. Glaser's lost wages and commissions.

In January 2018, Trustee sent a letter to Mr. Bailey contending that the malpractice claims against Ms. Guymon were property of Debtors' estate. She further maintained that Debtors and Mr. Bailey violated the automatic stay by filing the state court malpractice complaint. Mr. Bailey disagreed with Trustee's contentions.

Trustee subsequently filed a motion in the bankruptcy court seeking a determination that the malpractice claims were property of the estate and that the filing of the state court complaint was a violation of the automatic stay (Determination Motion). Trustee argued that Debtors had a contingent interest in the malpractice claims which were sufficiently rooted in Debtors' pre-bankruptcy past as Ms. Guymon's legal representation began prepetition. Debtors opposed, contending that the malpractice claims accrued postpetition and were not property of their estate.

Around the same time, Ms. Guymon removed the state court malpractice action to the bankruptcy court initiating an adversary proceeding. Debtors responded with a motion to remand, contending that the malpractice claims were not property of their estate.

4

In April 2018, the bankruptcy court heard the Determination Motion and the motion to remand and took the matters under submission.

On June 14, 2018, the bankruptcy court issued its oral ruling. Applying Nevada law, the court found that the malpractice claims were not property of Debtors' estate because actual damages were an essential part of a malpractice claim. Therefore, a malpractice claim did not accrue until damage was caused. The bankruptcy court found that the damage or harm occurred postpetition when Ms. Guymon did not dismiss Debtors' bankruptcy case before discharge and when Debtors received the June 2017 letter from the IRS. Trustee filed a timely appeal from the bankruptcy court's order denying her Determination Motion.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in finding that Debtors' malpractice claims against Ms. Guymon were not property of their estate.

## STANDARD OF REVIEW

Whether property is property of the estate is a question of law reviewed de novo. *Anderson v. Rainsdon (In re Anderson)*, 572 B.R. 743, 747 (9th Cir. BAP 2017).

## DISCUSSION

### A.      Legal Standards: Property of the Estate

The filing of a bankruptcy case creates an estate and § 541(a)(1) defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." "Legal causes of action are included within the broad scope of § 541." *Goldstein v. Stahl (In re Goldstein),* 526 B.R. 13, 21 (9th Cir. BAP 2015) (citing *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986) ). Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not. Property of the estate also includes a debtor's contingent interest in future payments, as long as that interest is "sufficiently rooted" in the debtor's prepetition past, even if that interest is reliant on future contingencies that have not occurred as of the filing date. *Segal v. Rochelle,* 382 U.S. 375, 379–80 (1966).

In *Segal,* the Supreme Court concluded that the debtor's loss-carryback tax refund claims were property of the estate because they were "sufficiently rooted in the pre-bankruptcy past." 382 U.S. at 380, 86 S.Ct. at 515. Although the Segal debtor could not claim the refunds until the tax year closed, which was post-petition, the only predicates for receiving the refunds (payment of taxes in prior years and a net operating loss) occurred pre-petition. *Id*. The debtor had more than a mere hope that his losses might generate revenue in the future; he possessed an existing

6

interest at the time of filing, even though his enjoyment of that interest was postponed. The Supreme Court did not allow the Segal trustee to assert more rights than the debtor had at the commencement of the case; it merely allowed the trustee to seek the interests existing, though still undetermined in quantity, at the time the debtor filed his petition.

Although *Segal* was decided under the Bankruptcy Act, the legislative history of § 541(a)(1) explains that the result in Segal survived enactment of the Bankruptcy Code in 1978. See S. Rep. 95–989, 82, 1978 U.S.C.C.A.N. 5787, 5868 (observing that "[t]he result of *Segal v. Rochelle*, 382 U.S. 375 (1966) is followed [under the Code], and the right to a refund is property of the estate.").

Indeed, the Ninth Circuit has applied the result of *Segal* to a variety of contingent interests, finding such interests are property of the estate as long as they are "sufficiently rooted in the pre-bankruptcy past." *See Jess v. Carey (In re Jess)*, F.3d 1204, 1207 (9th Cir. 1999) (finding portion of contingent attorney fee attributable to pre-petition work was an estate asset notwithstanding the work on case continued and judgment arose post-petition); *Neuton v. Danning (In re Neuton)*, 922 F.2d 1379, 1382–83 (9th Cir. 1990) (contingent beneficial interest in an inter vivos trust constituted property of the bankruptcy estate notwithstanding that debtor's right to receive income vested only upon the death of the preceding beneficiary which occurred after the bankruptcy petition was filed); *Minoco Group of*

7

*Cos., Ltd. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Group of Cos., Ltd.)*, 799 F.2d 517, 518 (9th Cir. 1986) (pre-petition insurance contract insuring the debtor company against claims made by its officer and directors was property of the estate); *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1425–26 (9th Cir. 1984) (contingent interests in payments due under a prepetition contract were property of the estate and passed to the trustee).

The common thread among these cases is that they "all involved payments pursuant to binding pre-existing contracts with well-defined contingency provisions." *See Sliney v. Battley (In re Schmitz)*, 270 F.3d 1254, 1258 (9th Cir. 2001). As a result, this Panel has held that to be "sufficiently rooted in the prebankruptcy past," the payment must arise from some prepetition right or entitlement. *In re Bender*, 385 B.R. 800 (Table), 2007 WL 4896288, *4 (9th Cir. BAP 2007), *appeal dismissed*, 586 F.3d 1159 (9th Cir. 2009)("[The Ninth Circuit] has limited its use of *Segal* to situations where a debtor received a post-petition benefit pursuant to a pre-petition right or entitlement."); *see also In re Bolton*, 584 B.R. 44, 55 (Bankr. D. Idaho 2018).

"The party seeking to include property in the estate bears the burden of showing that the item is property of the estate." *MacKenzie v. Neidorf (In re Neidorf)*, 534 B.R. 369, 372 (9th Cir. BAP 2015). We conclude that Trustee has failed to meet her burden for the reasons discussed below.

**B.     Analysis**

Federal law determines whether an interest is property of the bankruptcy estate, *Segal*, 382 U.S. at 379, and "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979); *see also Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law.").

State law thus controls whether Debtors' legal malpractice cause of action existed at the time they filed their bankruptcy petition. *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir.  2001) (to determine when a cause of action accrues, we look to state law); *see also Canatella v. Towers (In re Alcala)*, 918 F.2d 99, 102 (9th Cir. 1990) (causes of action which accrued before Chapter 7 petition is filed are part of the estate vested in the trustee).

Under Nevada law, Debtors' cause of action for legal malpractice against Ms. Guymon could not arise until, among other things, damage had been sustained. *Semenza v. Nev. Med. Liability Ins. Co.*, 104 Nev. 666, 668 (1988) (citing *Jewett v. Patt*, 95 Nev. 246, 247 (1979). If damage has not been sustained, or where it is too early to know whether the damage has been sustained, a legal malpractice action is premature and should be dismissed. *Id.* at 668. Accordingly, under Nevada law, since actual damages are an

essential part of a legal malpractice suit, a tort action cannot accrue until damage has occurred.

Although Ms. Guymon failed to make certain inquiries before filing Debtors' petition[2], Debtors did not suffer any the damages asserted in their complaint from the alleged malpractice before or even contemporaneous with their filing. After the filing, Ms. Guymon could have moved to dismiss Debtors' case prior to their discharge and then waited the appropriate period of time before refiling. If she had taken this course of action, the malpractice action would not have arisen. After their discharge, Debtors suffered damages as a result of their discharge and the IRS's decision to pursue the claim as evidenced by the notification from the IRS in June of 2017 that the 2012 tax debt was due. In short, the malpractice claims cannot be deemed to have accrued prepetition as the damages caused by Ms. Guymon's negligence were suffered by Debtors entirely postpetition.

Because Debtors' malpractice cause of action had not accrued prepetition as a matter of state law, it follows that it is not "sufficiently

---

[2] Debtors alleged in their complaint against Ms. Guymon that she (1) failed to discuss with Debtors the legal consequences of a six-month extension Debtors had obtained from the IRS for the filing of their 2012 income taxes; (2) failed to inquire whether Debtors had requested or applied for an extension of time to file their 2012 federal income tax return; and (3) failed to order a transcript of their 2012 federal income tax return, or failed to adequately review such transcript and know of the extension to October 15, 2013, for Debtors to file their 2012 federal income tax return.

rooted in the prebankruptcy past." Unlike the debtor in *Segal* who had an existing interest in the tax refunds on the petition date, Debtors had no prepetition right or entitlement to commence a malpractice action against Ms. Guymon because under Nevada law, without damages, no cause of action existed prepetition. Although it was possible that Debtors would suffer damages from Ms. Guymon's negligence, that possibility had no value on the petition date. A mere hope, expectancy, or nebulous possibility does not rise to the level of a "legal or equitable interest" in property such that it might be considered property of the estate. *In re Schmitz*, 270 F.3d at 1258 (citing *Drewes v. Vote (In re Vote)*, 261 B.R. 439, 444 (8th Cir. BAP 2001)).

In sum, contrary to Trustee's arguments, it is not enough that a cause of action has some root in prepetition conduct or facts. Rather, under *Segal*, it must be "sufficiently" rooted. Here, under Nevada law, no property interest could come into existence until Debtors suffered damages which happened postpetition. Accordingly, the bankruptcy court properly found that their cause of action for malpractice against Ms. Guymon was not property of their estate.

## CONCLUSION

For the reasons stated, we AFFIRM.

11